IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANGELA DAWN QUALLS, Personal Representative of the ESTATE OF KENNETH P. QUALLS, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case No. CIV-14-126-D ) |
| CITY OF PIEDMONT, | ) ) |
| Defendant. | ) ) |

**O R D E R**

Before the Court is Defendant's Motion for Summary Judgment [Doc. No. 26], which is fully briefed and at issue.[1]

**Factual and Procedural Background**

Plaintiff Kenneth P. Qualls[2] is a former employee of Defendant City of Piedmont (the "City"). He brings suit under 42 U.S.C. § 1983 for alleged violations of his constitutional rights in the termination of his employment as a police officer. Specifically, Plaintiff claims he had a property interest in continued employment as a member of the Oklahoma Police Pension and Retirement System, Okla. Stat. tit. 11, § 50-101 *et seq.*, and his rights to procedural and substantive due process under the Fourteenth Amendment were violated by

---

[1] The Motion is supported by Defendant's opening and reply briefs [Doc. Nos. 27 and 34] and three conventionally-filed exhibits consisting of audio recordings on a compact disk [Doc. No. 29]; it is opposed by Plaintiff's response brief [Doc. No. 31]. All of these materials have been considered.

[2] During the pendency of the Motion, Kenneth Qualls died, but his § 1983 claims survived. The personal representative of his estate was timely substituted as the plaintiff to pursue the claims in his place. For ease of discussion, the Court will continue to refer to Mr. Qualls as the plaintiff.

the manner in which the City terminated his employment. Plaintiff also claims under § 1983 that a liberty interest in his reputation arose from public statements made by the mayor in connection with his termination and that his constitutional right to a due-process hearing to clear his name was violated. Plaintiff brings pendent state law claims seeking a judicial determination of whether he was terminated for "cause," as required by Okla. Stat. tit. 11, § 50-123, and asserting that his termination violated a public policy of the State of Oklahoma. Plaintiff filed suit in state court, but the City removed the case to federal court based on jurisdiction under 28 U.S.C. § 1331 and § 1441.

By its Motion, the City seeks summary judgment on Plaintiff's § 1983 claims on the ground that he cannot establish a violation of his due process rights. Specifically, the City contends Plaintiff was not denied either procedural or substantive due process in the termination of his employment and no liberty interest was implicated by the manner of his termination. Regarding Plaintiff's state-law claims, the City asks the Court either to grant summary judgment on those claims or to decline supplemental jurisdiction and dismiss them.

**Standard of Decision**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for either party.

*Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks sufficient evidence on an essential element of a claim, all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322-23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed. R. Civ. P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record." *See* Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### Statement of Undisputed Facts[3]

Plaintiff began his employment with the City as a police officer on August 29, 2011. The City operates under a council-city manager form of government and a city charter. *See*

---

[3] This statement includes all material facts asserted by a party that are properly supported and not opposed in the manner required by Rule 56(c). All facts are stated in the light most favorable to Plaintiff.

3

Crosby Decl., attach. 16 [Doc. No. 27-17] (hereafter, "Charter") § 1-2. Under this form of government, the city manager has the authority to appoint and, when necessary for just cause, to discipline and remove officers or employees of the City, including police officers. *See* Charter, § 3-3(1). However, the heads of administrative departments are authorized to make employee selections and recommend disciplinary actions to the city manager. *Id*. During the relevant time period, James D. Crosby was employed as the city manager, and Alex Oblein served as the chief of police.

On November 4, 2012, an incident occurred while Plaintiff was on patrol duty that resulted in his issuance of a citation to the mother of a young boy for assisting the child in an act of public urination. Plaintiff alleges he consulted his superiors before citing the mother, Ashley Warden, and obtained a supervisor's permission to issue a citation for public urination. The next day, Plaintiff amended the charge at the direction of the district attorney's office to one of contributing to the delinquency of a minor. The district attorney later declined to pursue any charge against Ms. Warden.

Plaintiff has testified that he met with Chief Oblein on November 5, 2012, and informed him of Ms. Warden's citation. Chief Oblein took no action at that time. Also on November 5, 2012, Ms. Warden complained to the Piedmont Police Department about the events involving Plaintiff. She and her mother were interviewed by Sergeant Tony Jobe the same day. The interview was recorded, and a copy of the audio recording and a written transcript have been submitted for the Court's review. *See* Crosby Decl., Exs. 4 & 5 [Doc.

Nos. 27-5, 27-6 & 29]. Sgt. Jobe later drafted a memorandum to Chief Oblein summarizing his involvement in the events of November 4, 2012. A copy of Sgt. Jobe's memorandum was provided to Mr. Crosby.

On November 13, 2012, Chief Oblein prepared a written recommendation to Mr. Crosby for termination of Plaintiff's employment and a written notice to Plaintiff that he was being placed on administrative leave with pay pending a pre-disciplinary hearing to be held on November 15, 2015. Chief Oblein has testified that Mr. Crosby directed him to prepare the recommendation for termination and that he likely would have recommended a suspension or some lesser discipline than termination. Plaintiff received a copy of Chief Oblein's notice stating that the subject of the November 15 hearing would be a recommendation for Plaintiff's discharge based on his actions in issuing the citation to Ms. Warden, which "showed a lack of good judgment" and had "brought criticism and ridicule on the entire Department and the City." *See* Crosby Decl., Ex. 7 [Doc. No. 27-8].

On November 15, 2012, the City convened the pre-disciplinary hearing, which consisted of a meeting in Mr. Crosby's office attended by him, Plaintiff, Plaintiff's attorney, and the City's attorney. While Plaintiff contends this hearing was insufficient to satisfy constitutional requirements, it is undisputed Plaintiff received advance written notice that the subject of the hearing would be Chief Oblein's recommendation to terminate Plaintiff's employment as a police officer, and Plaintiff received an opportunity to explain his actions. Unknown to Mr. Crosby at the time, Plaintiff recorded the meeting; a copy of the audio

5

recording and a written transcript have been submitted for the Court's review. *See* Crosby Decl., Exs. 10 & 11 [Doc. Nos. 27-11, 27-12 & 29].

The following day, on November 16, 2012, Mr. Crosby issued a notice of discharge to Plaintiff effective the same day. The notice contained a statement of reasons for Mr. Crosby's decision to terminate Plaintiff's employment. Specifically, Mr. Crosby found Plaintiff's "actions in the issuance of a Citation to Ashley Warden . . . were extremely inappropriate" and "showed a total lack of good judgment" that "call[ed] into question [Plaintiff's] decision making skills in future critical situations." *See* Crosby Decl., Ex. 1 [Doc. No. 27-2]. Plaintiff's actions also "placed the Police Department and the City in a position of embarrassment and ridicule in the public eye." *Id*. The notice advised Plaintiff of his right to appeal the decision within 10 days under cited provisions of the City's charter and an ordinance.

On November 19, 2012, Plaintiff's attorney sent a letter to the City requesting a hearing before the personnel board. The attorney suggested in light of the upcoming holiday season, "a hearing in January or February" of 2013 might be preferable. *See* Crosby Decl. Ex. 12 [Doc. No. 27-13]. The City's charter provided for a three-member personnel board appointed by the mayor and confirmed by the city council. *See* Charter § 8-2(A). The board was required to elect one member to serve as chairman, and the chairman was authorized to call special meetings and administer oaths. The board had the power to subpoena witnesses to testify and to produce documents and other evidence. *Id.* § 8-2(C).

A personnel board meeting and hearing regarding Plaintiff's termination occurred on July 1, 2013. An audio recording of the hearing and a transcript have been submitted for the Court's review. *See* Crosby Decl. Exs. 14 & 15 [Doc. Nos. 27-15, 27-16 & 29]. Plaintiff contends the board did not allow the presentation of evidence at the hearing. The recording and the transcript confirm that the chairman announced at the outset of the hearing: "This is an appeal hearing, not an evidentiary hearing;" and "The public is not allowed to speak, nor are witnesses allowed." *See* Tr. 4:6-7, 16-18. The chairman also stated, however, the purpose of the hearing was a "due process hearing" to allow Plaintiff to present his view and to allow the board to question Plaintiff. *Id*. 5:18-6:2.

The City's attorney, Mike Segler, made an initial presentation by simply providing each board member with a packet that contained "the entire set of documents upon which [the termination] decision was made." *Id*. 8:9-10.[4] Mr. Segler identified the documents as consisting of Plaintiff's November 4, 2012 incident report, a memo from Chief Oblein to Mr. Crosby stating "14 areas of concerns" regarding Plaintiff, the citation issued by Plaintiff to the child's mother, a request from a neighbor for increased patrols due to the behavior of the child's family, Chief Oblein's recommendation to Mr. Crosby for Plaintiff's termination, Sgt. Jobe's report, and Mr. Crosby's November 16 notice of discharge stating his reasons for the decision. *Id*. 6:7-8:4.

---

[4] He had previously provided the same packet of materials to Plaintiff. Id. 8:14-22.

Plaintiff's attorney, Jarrod Leaman, then argued Plaintiff's case to the board, and Plaintiff addressed the board directly, explaining in a detailed narrative statement his version of the events that led to his termination. Mr. Leaman examined Plaintiff regarding additional facts, and individual board members questioned Plaintiff about their concerns. Mr. Crosby attended the hearing, but he was not asked to speak. No witnesses were sworn to testify. Plaintiff did not ask the personnel board to subpoena any witnesses or administer any oaths, however, and he did not object to any limitations placed on the hearing.

At the conclusion of the hearing, the personnel board decided by a 2-to-1 vote to uphold the termination decision. Mr. Crosby was notified in writing of the board's decision, and he sent a final letter of termination to Plaintiff on July 15, 2013. Plaintiff filed this suit in the District Court of Canadian County, Oklahoma, on July 31, 2013. The City was served with process on January 22, 2014, and filed a timely notice of removal to federal court.

## Discussion

### A. Procedural Due Process Claim

Plaintiff's claim that the City denied him procedural due process requires proof that he had a constitutionally protected interest in his employment by the City, and that the City did not follow constitutionally adequate procedures to terminate his employment. *See Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009); *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004). For purposes of summary judgment, the City concedes that Plaintiff had a property interest in his continued employment as a police officer. The

8

City contends, however, that its pre-termination and post-termination procedures satisfied constitutional standards, that Plaintiff failed to utilize all of the post-termination procedures available to him, and that a formal evidentiary hearing would have yielded the same result.

"An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation omitted). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id*. (citations omitted). A constitutionally adequate "pretermination hearing requires: (1) 'oral or written notice [to the employee] of the charges against him;' (2) 'an explanation of the employer's evidence and [3] an opportunity [for the employee] to present his side of the story.'" *Montgomery*, 365 F.3d at 936 (quoting *Loudermill*, 470 U.S. at 546); *see also Riggins*, 572 F.3d at 1108. The court of appeals has explained these requirements as follows:

> We have upheld as sufficient to meet these requirements informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors, *see Seibert v. University of Oklahoma Health Sciences Center*, 867 F.2d 591, 598 (10th Cir.1989), and even a limited conversation between an employee and his supervisor immediately prior to the employee's termination, *see Powell v. Mikulecky*, 891 F.2d 1454, 1459 (10th Cir.1989). The objective of the process is "an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *West* [*v. Grand Cty.*], 967 F.2d [362,] at 367 [(10th Cir. 1992)] (citation omitted).

*Riggins*, 572 F.3d at 1108 (footnote omitted).

9

The procedures that are constitutionally required to provide due process depend on the circumstances of a particular case. If only minimal procedural protections occur before an employee's termination, due process requires an opportunity for a post-termination hearing at which the decision may be challenged "in a more detailed fashion." *Montgomery*, 365 F.3d at 938. Further, the adequacy of post-termination procedures depends on the earlier process afforded. "When the pretermination process offers little or no opportunity for the employee to present his side of the case, the procedures in the post-termination hearing become much more important." *Benavidez v. City of Albuquerque*, 101 F.3d 620, 626 (10th Cir. 1996); *see Montgomery*, 365 F.3d at 938.

On the record presented in this case, the Court finds that Plaintiff cannot establish a denial of due process under the circumstances. The undisputed facts establish that Plaintiff received before termination all of the procedural protections that the Due Process Clause requires, namely, notice of the recommended decision and an opportunity to respond and present his side of the story. He was represented by counsel, and permitted to fully explain his actions. Plaintiff's only criticism of the pre-termination hearing is that it lacked a neutral decision maker. Plaintiff argues that the "hearing officer," Mr. Crosby, had already pre-judged his case. *See* Pl.'s Resp. Br. [Doc. No. 31], pp.23-24. Plaintiff presents no legal authority, however, for the proposition that a pre-termination hearing must be conducted by a neutral person with no prior involvement in the case. In fact, this argument is contrary to Tenth Circuit case law (discussed *supra*) and, therefore, is rejected by the Court.

Regarding post-termination procedures, Plaintiff focuses on the lack of "a full-blown, adversarial post-termination hearing" with the admission of evidence and the testimony of sworn witnesses subject to cross-examination. *See* Pl.'s Resp. Br. [Doc. No. 31], pp.29-30 (quoting *Calhoun v. Gaines*, 982 F.2d 1470, 1477 (10th Cir. 1992), and *Kelly v. Indep. Sch. Dist. No. 12*, 80 F. App'x 36, 39 (10th Cir. 2003) (unpublished)). Plaintiff argues that constitutional due process entitled him to receive an independent determination by an impartial tribunal of whether his termination was justified.[5]

While Plaintiff accurately quotes *Calhoun*, he fails to acknowledge the context in which the requirement of a "full-blown, adversarial post-termination hearing" was discussed. As later explained by the Tenth Circuit in the case of another terminated police officer, when rejecting an argument similar to the one advanced by Plaintiff in this case the court stated:

> It is true that in *Calhoun* we used that language. However, in *Calhoun*, we first determined that Calhoun, the plaintiff therein, had *not* received "due process" in the pre-termination hearings and it was in that context that we said that the plaintiff was entitled to a "full blown" hearing in his post-termination hearings. In the instant case the district court held that plaintiff had received "due process" in his pre-termination proceedings, a holding with which we are in accord, and which is *not* raised on appeal. . . .
>
> So, the question presented on this particular matter is whether plaintiff was given "due process" in his post-termination hearing, wherein the district

---

[5] To the extent Plaintiff contends the City failed to follow procedures prescribed by its charter, this contention has no bearing on his § 1983 claim. The question of whether constitutionally adequate procedures were provided is a matter of federal law; noncompliance with state-law requirements is not determinative. *See Loudermill*, 470 U.S. at 541; *Vitek v. Jones*, 445 U.S. 480, 491 (1980); *Guttman v. Khalsa*, 669 F.3d 1101, 1115 (10th Cir. 2012); *Ward v. Anderson*, 494 F.3d 929, 935 (10th Cir. 2007) ("A failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process; the alleged violation must result in a procedure which itself falls short of standards derived from the Due Process Clause.") (internal quotation omitted).

11

> court held, *inter alia*, under the described circumstances, that plaintiff did have notice of the hearing, and of his right to respond, and, in fact, was given a chance to tell his side of the story (which he did, through counsel, at the hearing before the Mayor). We agree with the district court's assessment of the matter.

*Sutherland v. Tooele City Corp.*, 91 F. App'x 632, 639 (10th Cir. 2004) (unpublished) (emphasis in original).[6]

The facts of *Sutherland* are distinguishable. However, the court of appeals' guidance in that case, and others, is instructive. In *Sutherland*, the plaintiff was terminated based on charges of misconduct and poor performance, ethical violations, and lying to a supervisor during an internal affairs investigation. *See id*. at 635. He received an informal pre-termination hearing with the police chief and a multi-step administrative process after termination, consisting of appeals to the mayor and an appeal board. The court of appeals rejected the plaintiff's argument, among others, that his post-termination hearings were inadequate because he was denied compulsory attendance of witnesses; the only witnesses to testify and be cross-examined at the hearing were the police chief and the mayor. *See id*. at 638 n.4. The court acknowledged that an adequate termination hearing may include the right to confront and cross-examine adverse witnesses, but in his case, the plaintiff had several opportunities to present a defense. *Id*. at 639 n.5. The court found that the plaintiff had received adequate post-termination procedures because "essentially, procedural due process requires notice and an opportunity to be heard in a meaningful time and manner" and

---

[6] Unpublished opinion cited pursuant to Fed. R. App. P. 32.1(a) and 10th Cir. R. 32.1.

"due process is flexible and calls for such procedural protections as the particular situation demands." *Id*. at 639-40 (internal quotation omitted) (citing *West v. Grand Cty.*, 967 F.2d 362, 369 (10th Cir. 1992)).

In *West*, a legal secretary for the county attorney's office was discharged when a newly-elected county attorney eliminated her position; the plaintiff claimed the reduction in force "was really a subterfuge designed to terminate her without cause." *West*, 967 F.2d at 364-65. The district court found, and the court of appeals agreed, that the plaintiff "received an adequate pretermination hearing" through a meeting with the new county attorney; she also "consulted with the [county] Commissioners regarding her rights as a permanent employee." *Id*. at 368. After termination, the plaintiff "appeared before the Commissioners for a grievance hearing," at which she "was represented by counsel, and she presented witnesses and testimony on her behalf." *Id*. at 369. To establish that the reduction in force was a subterfuge, the plaintiff offered her own testimony and the testimony of the former county attorney. The commissioners found that she had failed to substantiate her claim, and denied relief.

As pertinent here, the court of appeals in *West* agreed with the district court that the post-termination hearing was adequate, rejecting the plaintiff's argument that it was deficient because she did not have the opportunity to confront and cross-examine adverse witnesses. The Tenth Circuit acknowledged that "procedural due process often requires confrontation and cross-examination of those whose word deprives a person of his livelihood. However,

13

confrontation and cross-examination are not rights universally applicable to all hearings."
*Id*. (internal quotations and citations omitted). The court explained why these procedures were unnecessary in the case before it:

> [W]hether the Due Process Clause requires that the terminated employee be offered the right to cross-examine or confront witnesses depends upon the significance and nature of the factual disputes at issue. Here, however, the parties agreed at oral argument that West did not seek to require [the county attorney's] attendance at the grievance hearing, nor was there any suggestion that she was inhibited or restricted from doing so. Under these circumstances, West cannot complain of her inability to confront [the county attorney] at the hearing.

*Id*. (footnote omitted).[7]

In this case, the City provided review procedures to challenge the termination decision. Plaintiff invoked these procedures, and a personnel board convened a due-process hearing. It is undisputed that the hearing was an adversarial proceeding at which Plaintiff was represented by counsel and had an opportunity to counter the City's presentation with his own testimony and evidence. Plaintiff did not request any other witnesses, and even now, he does not identify any witness who was necessary or important to his defense. The city manager attended the hearing, but Plaintiff did not ask to confront or examine him about the termination decision. Further, no factual dispute was presented regarding the events of November 4, 2012 leading to Plaintiff's discharge; the question to be decided was whether

---

[7] The court also cited *Rosewitz v. Latting*, 689 F.2d 175, 177-78 (10th Cir. 1982), *abrogated on other grounds by*, *Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190 (10th Cir. 1999), as an example of a case where "a post-termination hearing before a grievance review board comported with due process despite the fact that the employee was not allowed to confront and cross-examine witnesses against her." *West*, 967 F.2d at 369.

Plaintiff's conduct warranted the severe sanction of discharge from employment as a police officer. This question was squarely presented to an impartial tribunal, the personnel board, which decided the matter adversely to Plaintiff. Judicial review of the personnel board's decision was available by filing a civil action, which Plaintiff has done in this case.[8] Under these circumstances, the Court finds that the procedures provided in connection with Plaintiff's termination were sufficient to satisfy due process.

For these reasons, the City is entitled to summary judgment on Plaintiff's § 1983 claim that he was denied procedural due process in the termination of his employment.

**B.      Substantive Due Process Claim**

Plaintiff also claims a Fourteenth Amendment right to substantive due process was violated in his termination of employment by the City. *See* Petition [Doc. No. 1-2], ¶ 19. The City challenges this claim by its Motion. The City asserts it did not engage in any "conduct that would constitute a substantive due process violation." *See* Def.'s Br. Supp. Mot. Summ. J. [Doc. No. 27], p.17.

Plaintiff fails to address this claim in his summary judgment response. Therefore, in the exercise of discretion under LCvR7.1(g), the Court deems confessed the issue of whether Plaintiff's termination violated a constitutional right of substantive due process. Further, the Court finds that the City is entitled to summary judgment on this claim.

---

[8] The Tenth Circuit suggested, but did not decide, in *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013), that a state law provision for judicial review of a termination decision could be considered in determining whether a constitutionally sufficient post-termination process was provided.

The Tenth Circuit recently addressed a § 1983 claim that a termination of public employment violated substantive due process, and explained the governing law as follows: "A Fourteenth Amendment substantive due process claims arises when a plaintiff alleges the government deprived him of a fundamental right. Substantive due process protects fundamental liberty interests and protects against the exercise of government authority that 'shocks the conscience.'" *Koessel v. Sublette Cty. Sheriff's Dep't*, 717 F.3d 736, 749 (10th Cir. 2013) (quoting *Seegmiller v. LaVerkin City*, 528 F.3d 762, 767 (10th Cir. 2008)). Here, as in *Koessel*, Plaintiff "has not asserted a fundamental liberty interest argument," and, therefore, the Court does not consider it. To show the City's "conduct is conscience shocking, [Plaintiff] must prove a government actor abused his or her authority or 'employ[ed] it as an instrument of oppression' in a manner that shocks the conscience." *Id*. at 750 (quoting *Williams v. Berney*, 519 F.3d 1216, 1220 (10th Cir. 2008)). "Whether an action was an abuse of authority depends on several 'non-exhaustive factors.'" *Id*. (citing *Williams*, 519 F.3d at 1224, and enumerating five factors). Again, Plaintiff presents no argument that would "demonstrate an abuse of government authority, let alone one sufficient to shock the judicial conscience." *Id*.

Based on the record presented and Plaintiff's lack of argument or authority to show his discharge violated a right of substantive due process, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material fact regarding his substantive due process claim. Therefore, the City is entitled to summary judgment on this § 1983 claim.

C.   **Liberty Interest Claim**

Plaintiff asserts as a separate § 1983 claim that the City's mayor publicly called him "stupid" after news media reports about the police citation, and that this public affront to his reputation implicated a constitutionally protected liberty interest for which he was entitled to a due-process hearing to clear his name. *See* Petition [Doc. No. 1-2], ¶¶ 10, 20. By its Motion, the City challenges the sufficiency of these alleged facts, arguing that "calling someone 'stupid' was not a violation of [Plaintiff's] liberty interest protected by the Fourteenth Amendment." *See* Def.'s Br. Supp. Mot. Summ. J. [Doc. No. 27], p.20.

Plaintiff's summary judgment response is silent concerning this § 1983 claim. He neither states any facts to support it nor provides any legal authority holding that a due process violation occurred. Therefore, as with Plaintiff's substantive due process claim, the Court in the exercise of discretion under LCvR7.1(g) deems confessed the issue of whether a liberty interest arose under the circumstances of Plaintiff's termination that was protected by a right of procedural due process. Further, upon consideration, the Court finds that the City is entitled to summary judgment on this claim.

Where a public employer terminates an employee and publicly states false charges of dishonesty that are stigmatizing and foreclose other employment opportunities, then a liberty interest protected by the Fourteenth Amendment is implicated. *See Melton v. City of Oklahoma City*, 928 F.2d 920, 927 (10th Cir. 1991) (en banc); *see also McDonald v. Wise*, 769 F.3d 1202, 1212 (10th Cir. 2014); *Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir.

17

1994). Plaintiff does not present any facts, supported in the manner required by Rule 56, to establish such circumstances existed in this case. Accordingly, the Court finds that Plaintiff has failed to demonstrate a genuine dispute of material facts concerning his claim that he was deprived of a liberty interest in his reputation without procedural due process.

For these reasons, the City is entitled to summary judgment on Plaintiff's § 1983 claim of a due process violation based on a liberty interest in his reputation.

**D.      Pendent Wrongful Discharge Claims**

Plaintiff asserts two other causes of action under state law. The exact nature of these claims is unclear from the allegations of his pleading and the arguments in his summary judgment brief. He asserts that his termination violated Oklahoma public policy and either a state statute or a provision of the City's charter that require "cause" or "just cause" for termination of employment. *See* Okla. Stat. tit. 11, § 50-123; 5-7; *see also* Charter, § 3-3(1).

Upon consideration, the Court concludes in the exercise of discretion under 28 U.S.C. § 1367(c)(3) that it should decline to exercise supplemental jurisdiction over these claims. Because the City is entitled to summary judgment on Plaintiff's § 1983 claims, all claims over which the Court has original jurisdiction have been adjudicated.

The court of appeals has observed: "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (internal quotation omitted); *see also Brooks v. Gaenzle*, 614 F.3d 1213, 1229 (10th Cir. 2010) (noting

a general rule of declining pendent jurisdiction when federal claims are resolved before trial).

Concerning a district court's exercise of discretion, the court of appeals has stated:

> Notions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary. The district court has discretion to try state claims in the absence of any triable federal claims; however, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction.

*Thatcher Enter. v. Cache Cty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990); *see Anglemyer v. Hamilton Cty. Hosp.,* 58 F.3d 533, 541 (10th Cir. 1995).

Applying the factors identified in *Thatcher*, the Court finds it should not retain supplemental jurisdiction over Plaintiff's state law claims. The Court is aware of the extent of pretrial efforts, which include the disclosure of witnesses and exhibits, the completion of discovery, and the filing of dispositive motions. The Court is also aware of the length of time that the case has been pending. However, no trial submissions have been made, nor have any substantial trial preparations been done. The case is not currently set on any trial docket. Further, Plaintiff's pendent claims involve unresolved issues of state law that are best decided by state courts. *See* 28 U.S.C. § 1367(c)(1). This is particularly true in light of events that have occurred during the pendency of the case. *See supra* note 2.[9] Under these circumstances, the Court finds Plaintiff's state law claims should be remanded to the state court in which the action was filed.

---

[9] It is unclear, for example, whether these claims now present an actual controversy. Plaintiff seeks remedies, such as reinstatement and lost pay, which may no longer be viable. It is also unclear whether Plaintiff has a state law "cause of action" that survives death. *See* Okla. Stat. tit. 12, § 1051.

**Conclusion**

For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's constitutional claims asserted under 42 U.S.C. § 1983 but that Plaintiff's state law claims should be remanded to state court for resolution on the merits, should the current Plaintiff, Angela Dawn Qualls as personal representative of the Estate of Kenneth P. Qualls, elect to pursue them.

IT IS THEREFORE ORDERED that Defendant City of Piedmont's Motion for Summary Judgment [Doc. No. 26] is GRANTED in part and DENIED in part, as set forth herein. Defendant is entitled to summary judgment on Plaintiff's § 1983 claims. The remainder of Plaintiff's action, asserting purely state law claims, is remanded to the District Court of Canadian County, Oklahoma.

IT IS SO ORDERED this 17th day of October, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE